**Michael Fuller, OSB No. 09357**
Lead Attorney for Plaintiff
Olsen Daines PC
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-201-4570

**Mark Geragos, Pro Hac Pending**
Of Attorneys for Plaintiff
Geragos & Geragos
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, California 90017
geragos@geragos.com
Phone 213-625-3900

(additional counsel on signature page)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ZACK BARTEL,** an Oregon consumer, individually and on behalf of all others,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>**SHOWTIME NETWORKS, INC.**,<br><br>　　　　　　　Defendant. | Case No. 3:17-cv-1331<br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br><br>Unlawful Trade Practices<br>Unjust Enrichment<br><br>28 U.S.C. § 1332<br><br>Demand for Jury Trial |

**COMPLAINT** – Page 1 of 18

1.

## THE PARTIES

Defendant Showtime Networks, Inc. is a Delaware corporation. In the regular course of its business, defendant advertised that consumers could pay $99.99 to "witness history" by streaming the Mayweather vs. McGregor fight live on its app, Showtime PPV. Specifically, defendant advertised that its system could stream the fight live in HD on its app starting at 6:00 pm PST on August 26, 2017.

2.

Plaintiff Zack Bartel is an individual consumer residing in Portland, Oregon. Like thousands of other fight fans across the country, plaintiff paid defendant $99.99 to stream the Mayweather fight live on its app in HD, as defendant's advertisement promised.

3.

## JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $5 million. Venue is proper under 28 U.S.C. § 1391 because the bulk of defendant's Mayweather fight advertising and sales in Oregon took place in the Portland metro area. This complaint's allegations are based on personal knowledge as to plaintiff's conduct and made on information and belief as to the acts of others.

4.

## FACTUAL ALLEGATIONS

On August 25, 2017, in response to defendant's advertisement and representation that its system would stream the Mayweather fight at 1080p resolution and at 60 frames per second, plaintiff paid defendant $99.99. Plaintiff's receipt is shown below:



**COMPLAINT** – Page 3 of 18

5.

On August 26, 2017 at 6pm PST, like thousands of other fight fans across the county, plaintiff turned on defendant's app in anticipation to watch the Mayweather fight. To his extreme disappointment and frustration, plaintiff (and thousands of other consumers) quickly learned that defendant's system was defective and unable to stream the Mayweather fight in HD as defendant had advertised. Instead of being a "witness to history" as defendant had promised, the only thing plaintiff witnessed was grainy video, error screens, buffer events, and stalls. The screenshots below show the quality of video plaintiff saw while he should have been watching the Mayweather fight on defendant's system in HD:



**COMPLAINT** – Page 4 of 18





**COMPLAINT** – Page 5 of 18

6.

Plaintiff was using up-to-date, top-of-the-line software and hardware, just as defendant required, including a 4th generation Apple TV. At the same time defendant's system was unable to stream the Mayweather fight in HD, plaintiff was able to watch other streaming services on YouTube and Netflix in crystal clear HD, as usual. Plaintiff took a speed test of his Internet just to make sure the issues weren't being caused by a bad connection. Plaintiff's speed test results below showed the issues were entirely due to defendant's defective system:



7.

When plaintiff turned to Twitter, he saw hundreds of complaints being tweeted by defendant's other app customers in real time during the Mayweather fight experiencing the same issue with defendant's defective service:

**COMPLAINT** – Page 6 of 18



**COMPLAINT** – Page 7 of 18

8.

Defendant's advertisement in iTunes below, which every consumer who purchased defendant's streaming app service saw, represented that consumers could witness history through live streaming access to the most anticipated sporting event of the year.



**COMPLAINT** – Page 8 of 18

10.

Unlike past big events like Mayweather vs. Pacquiao in 2015, the Mayweather vs. McGregor event on August 26, 2017 was the first major fight available on pay-per-view without a cable subscription.

11.

In hopes of maximizing profits, defendant rushed its pay-per-view streaming service to market, without securing enough networking bandwidth to support the number of subscribers who paid to watch the fight. Defendant's app used HLS (HTTP Live Streaming), which is a VBR (variable bitrate) video delivery protocol. With VBR video, it's possible to perform a bitrate "upshift" or "downshift" based on how much network bandwidth is available to the video player. Video players that support HLS and other VBR formats (DASH, MSS Microsoft Smooth Streaming, etc.) detect when video segments are not downloading fast enough and perform a downshift by downloading a lower bitrate version of the video file. Conversely, if the video player knows it's downloading the video file fast enough, it can perform an upshift, and start downloading the higher resolution version of the video files. Defendant knew and should have known its system wasn't able to conform to the qualify defendant promised its customers, based on defendant's available bandwidth and subscriber numbers. Instead of being upfront with consumers about its new, untested, underpowered

service, defendant caused likelihood of confusion and misunderstanding as to the source and quality of the HD video consumers would see on fight night. Defendant intentionally misrepresented the quality and grade of video consumers would see using its app, and knowingly failed to disclose that its system was defective with respect to the amount of bandwidth available, and that defendant's service would materially fail to conform to the quality of HD video defendant promised.

12.

## CLASS ALLEGATIONS

Plaintiff files this complaint as a national class action lawsuit. The Oregon class consists of Oregon consumers who:

**a)** Viewed defendant's app advertisement on iTunes, then paid $99.99 to stream the Mayweather vs. McGregor fight live on defendant's app, Showtime PPV, and

**b)** Who were unable to view the Mayweather vs. McGregor fight live on defendant's app in HD at 1080p resolution and at 60 frames per second, and who experienced ongoing grainy video, error screens, buffer events, and stalls instead.

13.

Excluded from the class are all attorneys for the class, officers and members of defendant, including officers and members of any entity with an ownership interest in defendant, any judge who sits on the case, and all jurors and alternate jurors who sit on the case.

14.

The exact number of aggrieved consumers in Oregon can be determined based on defendant's sales records and data.

15.

Every aggrieved Oregon consumer misled by defendant's advertisement as alleged in this complaint suffered an actual ascertainable loss of the $99.99 they paid to stream the Mayweather fight live in HD as advertised. But for defendant's false representations as alleged in this complaint and its failure to disclose known defects and nonconformities in its system and service, plaintiff and the members of the putative class would not have paid defendant any money and would have instead have viewed the Mayweather fight through a different service.

16.

Defendant's behavior as alleged in this complaint willfully violated the Oregon Unlawful Trade Practices Act ("UTPA"), including

ORS 646.608(1)(b), (e), (g), (i), and (t). This UTPA violation is common to the Oregon class.

17.

The class is so numerous that joinder is impracticable. Upon information and belief, the Oregon class alone includes thousands of members, based on the historic nature of the fight and the record-breaking demand to watch it.

18.

Common questions of fact and law predominate over any questions affecting only individual class members. Common questions include whether plaintiff and the Oregon class members are entitled to equitable relief, whether defendant acted willfully, recklessly, knowingly, or intentionally, whether plaintiff and the Oregon class members are entitled to recover actual damages or statutory damages or punitive damages from defendant, and whether plaintiff and the Oregon class are entitled to recover fees and costs for defendant's UTPA violation.

19.

Plaintiff's claims are typical of the claims of the Oregon class because each was misled by defendant's false representations and failures to disclose, the injuries suffered by plaintiff and the Oregon class members are identical ($99.99), and plaintiff's claim for relief is

based upon the same legal theories as are the claims of the other class members. Plaintiff will fairly and adequately protect and represent the interests of the class because his claim is typical of the claims of the Oregon class, he is represented by nationally known and locally respected attorneys who have experience handling class action litigation and consumer protection cases who are qualified and competent, and who will vigorously prosecute this litigation, and their interests are not antagonistic or in conflict with the interests of the Oregon class.

20.

A class action is superior to other methods for fair and efficient adjudication of this case because common questions of law and fact predominate over other factors affecting only individual members, as far as plaintiff knows, no class action that purports to include Oregon customers suffering the same injury has been commenced in Oregon, individual class members have little interest in controlling the litigation, due to the high cost of actions, the relatively small amounts of damages, and because plaintiff and his attorneys will vigorously pursue the claims. The forum is desirable because the bulk of defendant's sales in Oregon took place in the Portland metro area. A class action will be an efficient method of adjudicating the claims of the class members who have suffered relatively small damages, as a result

**COMPLAINT** – Page 13 of 18

of the same conduct by defendant. In the aggregate, class members have claims for relief that are significant in scope relative to the expense of litigation. The availability of defendant's sales records and data will facilitate proof of class claims, processing class claims, and distributions of any recoveries.

21.

## OREGON CLASS CLAIMS FOR RELIEF

### – Claim 1 –

### VIOLATION OF ORS 646.608

Defendant willfully, recklessly, knowingly and intentionally violated ORS 646.608 as alleged above, causing plaintiff and the Oregon class ascertainable losses.

22.

Plaintiff and the Oregon class are entitled to equitable relief in the form of an accounting, restitution, and unless agreed upon by defendant, an order to preserve all documents and information (and electronically stored information) pertaining to this case. Plaintiff and the Oregon class are entitled to recover actual damages or $200 statutory damages, whichever is greater, interest and fees and costs under ORS 646.638. Defendant's violation of the UTPA as alleged above was reckless, in pursuit of profit, and constituted a wanton, outrageous and oppressive violation of the right of Oregon consumers to be free from unlawful trade practices. Plaintiff and the Oregon class are entitled to recover punitive damages under ORS 646.638.

23.

– **Claim 2** –

**UNJUST ENRICHMENT**

As a matter of justice and equity, defendant should not be able to retain the pay-per-view fees it charged plaintiff and the Oregon class for live HD streaming services that were never provided or received. Plaintiff and the Oregon class are entitled to restitution based on defendant's unjust enrichment as alleged in this complaint.

24.

Demand for jury trial.

## PRAYER FOR RELIEF

Plaintiff seeks relief for himself and the proposed Oregon class as follows:

A. Unless agreed upon by defendant, an order to preserve all documents and information (and electronically stored information) pertaining to this case,

B. An order certifying this matter as a class action,

C. Judgment against defendant for actual, statutory, and punitive damages, interest, and reimbursement of fees and costs,

D. And other relief the Court deems necessary.

August 26, 2017

                                              **RESPECTFULLY FILED,**

                                              s/ Michael Fuller
                                              **Michael Fuller, OSB No. 09357**
                                              Lead Attorney for Plaintiff
                                              Olsen Daines PC
                                              US Bancorp Tower
                                              111 SW 5th Ave., Suite 3150
                                              Portland, Oregon 97204
                                              michael@underdoglawyer.com
                                              Direct 503-201-4570

(additional counsel information on next page)

**COMPLAINT** – Page 17 of 18

| | |
|---|---|
| **Rex Daines, OSB No. 952442** | **Ben Meiselas, Pro Hac Pending** |
| Of Attorneys for Plaintiff | Of Attorneys for Plaintiff |
| Olsen Daines PC | Geragos & Geragos |
| US Bancorp Tower | Historic Engine Co. No. 28 |
| 111 SW 5th Ave., Suite 3150 | 644 South Figueroa Street |
| Portland, Oregon 97204 | Los Angeles, California 90017 |
| rdaines@olsendaines.com | meiselas@geragos.com |
| Phone 503-362-9393 | Phone 213-625-3900 |
| | |
| **Robert Le, OSB No. 094167** | **Kelly Jones, OSB No. 074217** |
| Of Attorneys for Plaintiff | Of Attorneys for Plaintiff |
| rl@robertlelaw.com | kellydonovanjones@gmail.com |

## PROOF OF MAILING

Under ORS 646.638(2), I declare and certify that on the date below I caused a copy of this complaint to be mailed to the Oregon Attorney General at the following address:

**Ellen Rosenblum**
**Oregon Attorney General**
**Oregon Department of Justice**
**1162 Court Street NE**
**Salem, Oregon 97301-4096**

August 26, 2017

                                                 s/ Michael Fuller
                                                 **Michael Fuller, OSB No. 09357**
                                                 Lead Attorney for Plaintiff
                                                 Olsen Daines PC
                                                 US Bancorp Tower
                                                 111 SW 5th Ave., Suite 3150
                                                 Portland, Oregon 97204
                                                 michael@underdoglawyer.com
                                                 Direct 503-201-4570

**COMPLAINT** – Page 18 of 18